IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARVEY D. BLACKBURN,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>TERRY WHITING,<br><br>　　　　Defendant. | No. C 10-1422 LHK (PR)<br><br>ORDER GRANTING<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT |

Plaintiff, a state prisoner proceeding *pro se*, filed a civil rights complaint pursuant to 42 U.S.C. § 1983 against Terry Whiting, a physician's assistant at Monterey County Jail. Plaintiff alleges that Defendant Whiting ("Defendant") was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. Defendant has moved for summary judgment. Plaintiff has filed an opposition, and Defendant has filed a reply. Having carefully considered the papers submitted, the Court hereby GRANTS Defendant's motion for summary judgment, for the reasons set out below.

**BACKGROUND**[1]

In 2008, medical records had established that Plaintiff had been diagnosed with hemolytic anemia ("AIHA"). (MSJ, Ex. A-5.) On September 23, 2009, Defendant prescribed

---

[1] The following facts are viewed in the light most favorable to Plaintiff, and are undisputed unless otherwise indicated.

Order Granting Defendant's Motion For Summary Judgment
G:\PRO-SE\SJ.LHK\CR.10\Blackburn422msj.wpd

1  aspirin to Plaintiff to treat his hypertension/high blood pressure ("HTN"). (*Id.*, Ex. B-8.) On
2  September 25, 2009, it was recorded that Plaintiff had chronic anemia, thrombocytopenic
3  purpura ("ITP"), and was also diagnosed with HTN. (*Id.*, Ex. B-10.) On Plaintiff's "Problem
4  List" as kept by the medical clinic, it states: "Allergies: NKDA No ASA or NSAIDS," and
5  notes that Plaintiff's major problems are AIHA, ITP, and HTN. (*Id.*, Ex. B-12.) "NKDA"
6  means "No known drug allergies." (*Id.*, Ex. G at 2.) "No ASA" means "no aspirin." (*Id.*)
7  "NSAIDS" are "non-steroidal anti-inflammatories," such as Ibuprofen. (*Id.*) On October 28,
8  2009, Plaintiff received a renewal of his aspirin prescription. (*Id.*, Ex. B-16.) On December 15,
9  2009, Defendant saw Plaintiff, who had been complaining of right shoulder pain and left wrist
10 pain. (*Id.*, Ex. B-19.) Defendant prescribed Ibuprofen for three days. (*Id.*). On December 21,
11 2009, Plaintiff's request for a refill of Ibuprofen was denied. (*Id.*, Ex. B-20.)

12       On January 18, 2010, Plaintiff went to the medical clinic to get treated for a pain in his
13 wrist. (Compl. at 3.) Defendant prescribed Motrin, a type of Ibuprofen, for three days to
14 Plaintiff. (*Id.*; Decl. Pl. at ¶ 5; MSJ, Ex. B-21.) Unbeknownst to Plaintiff, he should not have
15 been prescribed Motrin because Plaintiff had no spleen. (Compl. at 3.) As a result of the
16 Motrin, Plaintiff asserts that he suffered severe nosebleeds, broke out in blisters all over his
17 body, suffered migraine headaches, and had red bumps inside his mouth and on his tongue. (*Id.*;
18 Decl. Pl. at ¶ 6; MSJ, Ex. E-5.) Plaintiff returned to see medical personnel, and, on January 22,
19 2010, Defendant attended to him again. (Compl. at 3.) Defendant looked at Plaintiff's outbreak
20 and concluded they were bruises. (*Id.*) Plaintiff asked Defendant what the bumps inside his
21 mouth were, and Defendant responded that she did not know. (*Id.*) Plaintiff stated that he was
22 having an allergic reaction to the Motrin, and Defendant did not believe him. (*Id.*) Plaintiff then
23 asked for a blood test so that he could send the results to his doctor; Defendant refused to do so.
24 (*Id.*)

25       Defendant noted in her progress notes that an allergic reaction was possible, but the least
26 likely. (MSJ, Ex. B-22.) She observed that Plaintiff was not in any apparent distress, and his
27 upper and lower extremities had scratch marks and abrasion-type lesions. (*Id.*) She also noted
28 that there were no signs of an allergic reaction. (*Id.*) Defendant told Plaintiff to avoid scratching

the abrasion-like spots and to follow up in sick call if his rash increased in severity.  (*Id.*)

The following day, because of his condition and persistent nosebleed, Plaintiff was admitted into Natividad Medical Center.  (Compl. at 3.)  From there, he was transferred to Salinas Valley Memorial Hospital where he had to undergo several blood transfusions and other procedures.  (*Id.*)  Plaintiff was diagnosed with ITP.  (Decl. Pl. at ¶ 8.)  ITP is a condition characterized by bleeding into the skin with the production of blood blisters or bruising and by hemorrhages into the mucous membranes, and is associated with a reduction in platelets and prolonged bleeding.  (MSJ, Ex. G at 4.)  On January 26, 2010, Plaintiff was discharged.  (Compl. at 8.)  On February 1, Plaintiff was transferred to North Kern State Prison, and then rushed to San Joaquin Community Hospital because of the continuing reaction to the Motrin.  (Decl. Pl. at ¶ 9.)

## LEGAL STANDARD

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986).  Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  On an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case."  *Id.* at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The Court is only concerned with disputes over

1  material facts and "factual disputes that are irrelevant or unnecessary will not be counted."
2  *Anderson,* 477 U.S. at 248.  It is not the task of the Court to scour the record in search of a
3  genuine issue of triable fact.  *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996).  The
4  nonmoving party has the burden of identifying, with reasonable particularity, the evidence that
5  precludes summary judgment.  *Id.*  If the nonmoving party fails to make this showing, "the
6  moving party is entitled to judgment as a matter of law."  *Celotex Corp.*, 477 U.S. at 323.

7  The Court's function on a summary judgment motion is not to make credibility
8  determinations or weigh conflicting evidence with respect to a disputed material fact.  *See T.W.*
9  *Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  The evidence
10 must be viewed in the light most favorable to the nonmoving party, and the inferences to be
11 drawn from the facts must be viewed in a light most favorable to the nonmoving party.  *See id.* at
12 631.

**DISCUSSION**

Plaintiff alleges that Defendant exhibited deliberate indifference when she: (1) prescribed Ibuprofen on January 18, 2010, and (2) later failed to diagnose that Plaintiff was having a reaction to the Motrin, and failed to administer a blood test.[2]

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment.[3]  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  A prison official violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged is, objectively,

---

[2] Plaintiff's objections to Defendant's exhibits are overruled.

[3] It is unclear whether Plaintiff was a pre-trial detainee rather than a prisoner when he was housed at Monterey County Jail.  Nevertheless, even though pretrial detainees' claims arise under the Due Process Clause, the Eighth Amendment serves as a benchmark for evaluating those claims.  *See Carnell v. Grimm*, 74 F.3d 977, 979 (9th Cir. 1996) (Eighth Amendment guarantees provide minimum standard of care for pretrial detainees).  The Ninth Circuit has determined that the appropriate standard for evaluating constitutional claims brought by pretrial detainees is the same one used to evaluate convicted prisoners' claims under the Eighth Amendment.  "The requirement of conduct that amounts to 'deliberate indifference' provides an appropriate balance of the pretrial detainees' right to not be punished with the deference given to prison officials to manage the prisons."  *Redman v. County of San Diego*, 942 F.2d 1435, 1443 (9th Cir. 1991) (en banc) (citation omitted).  *See, e.g., Carnell*, 74 F.3d at 979 (standard of deliberate indifference applicable to pretrial detainees' medical claims).

sufficiently serious, and (2) the official is, subjectively, deliberately indifferent to the inmate's health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Id.* The following are examples of indications that a prisoner has a "serious" need for medical treatment: the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain. *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds, WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

A prison official exhibits deliberate indifference when he knows of and disregards a substantial risk of serious harm to inmate health. *See Farmer*, 511 U.S. at 837. The official must both know of "facts from which the inference could be drawn" that an excessive risk of harm exists, and he must actually draw that inference. *Id.* "A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981). Where doctors have chosen one course of action and a prisoner-plaintiff contends that they should have chosen another course of action, the plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances, . . . and the plaintiff must show that they chose this course in conscious disregard of an excessive risk to plaintiff's health." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (internal citations omitted).

The parties do not dispute that Plaintiff's chronic conditions of AIHA and ITP were serious medical conditions. However, Plaintiff has failed to raise a triable issue of fact that Defendant acted with deliberate indifference. Here, to be liable for deliberate indifference to Plaintiff's serious medical needs, Defendant must have known that Plaintiff faced a substantial risk of harm, and consciously disregarded that risk by failing to take reasonable steps to abate it. *See Farmer*, 511 U.S. at 837.

The undisputed evidence shows that Plaintiff's medical records indicated that he had no

known drug allergies, but there were notations indicating "No ASA or NSAIDS" on Plaintiff's "Problem List". (MSJ, Ex. B-12.) Defendant's expert, Dr. Rael, proffers that the notation "No ASA or NSAIDS" was "used to indicate that the medications are contraindicated for [Plaintiff] because of" Plaintiff's AIHA and ITP. (MSJ, Ex. G at 3.) However, opines Dr. Rael, the decision to prescribe aspirin or NSAIDS was a matter of medical judgment. (*Id.*) For example, Defendant's expert, Dr. Rael, declares that Plaintiff had been prescribed aspirin on an ongoing basis to treat his HTN, and had suffered no adverse reaction. (*Id.* at 2.)

In December 2009, Defendant saw Plaintiff when he complained of right shoulder pain and left wrist pain. (*Id.*) Defendant prescribed a short three-day prescription of Ibuprofen. (*Id.*) Plaintiff suffered no negative consequences, and in fact, requested a re-fill. (*Id.*) Then, approximately one month later, Plaintiff presented with right wrist pain. (*Id.*) Defendant again prescribed a short, three-day prescription of Ibuprofen. (*Id.*)

Plaintiff points to no competent evidence that Defendant knew that prescribing Ibuprofen on January 18, 2010 presented a serious risk of harm to Plaintiff. *See, e.g.*, *Toguchi v. Chung*, 391 F.3d 1051, 1058-60 (9th Cir. 2004) (summary judgment in favor of defendant doctor appropriate where evidence showed doctor did not believe that Cogentin use presented a serious risk of harm to plaintiff, and where there was no indication in the record that doctor was aware of a risk that plaintiff was suffering from Klonopin withdrawal). It is of no matter if Defendant *should* have been aware of the risk for purposes of determining whether she acted with deliberate indifference. *See Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002). That Defendant had previously prescribed Ibuprofen to Plaintiff with no adverse effects supports Defendant's conclusion that she did not know it would present a serious risk of harm to Plaintiff. Further, Plaintiff does not dispute Defendant's evidence that the decision to prescribe Ibuprofen was a matter of medical judgment. Because there is an absence of evidence demonstrating that Defendant consciously disregarded a serious risk of harm by prescribing a short-dose of Ibuprofen, Defendant was not deliberately indifferent when she prescribed Ibuprofen on January 18, 2010.

Three days later, on January 22, 2010, Plaintiff saw Defendant again. (MSJ, Ex. G at 3.)

1   According to Dr. Rael, Defendant's reaction and treatment on that day were reasonable. (*Id.*)
2   Defendant's notes state that she observed Plaintiff's arms and legs, which had scratch-like marks
3   and abrasion-type lesions on them, and noted that he did not show signs of an allergic reaction.
4   (*Id.*) Defendant told Plaintiff to avoid scratching and told him to follow-up if he had shortness of
5   breath or an increase in severity of his rash. (*Id.*) According to Defendant, between January 22
6   and January 23, Plaintiff's symptoms increased to where he had nosebleeds, blood blisters, and
7   bruising, which resulted in a different diagnosis indicating a strong possibility that Plaintiff's
8   ITP was flaring up. (*Id.*) However, Plaintiff's recitation of his symptoms on January 22, 2010
9   differ slightly from Defendant's medical notes. Plaintiff alleges that at the time he saw
10  Defendant again on January 22, he suffered from severe nosebleeds, had broken out in blisters all
11  over his body, suffered migraine headaches, and had red bumps inside his mouth and on his
12  tongue. (Compl. at 3; Decl. Pl. at ¶ 6.)

13          Even under Plaintiff's version of the facts, the evidence does not support an inference of
14  deliberate indifference by Defendant. That she chose a different course of treatment than that
15  preferred by Plaintiff does not demonstrate that she did so in disregard of a substantial risk of
16  serious harm to Plaintiff. At the time, Defendant considered whether Plaintiff was having an
17  allergic reaction, but rejected that notion because, according to Defendant, Plaintiff did not have
18  signs of infection or an allergic reaction. (MSJ, Ex. B-22.) Further, Defendant advised Plaintiff
19  to follow-up in sick call if his condition worsened. (*Id.*) This evidence does not lead to a
20  reasonable inference that Defendant knew Plaintiff was faced with a substantial risk of harm and
21  consciously disregarded it. Moreover, even if Defendant should have suspected that Plaintiff's
22  ITP was flaring up, or should have erred on the side of caution and conducted more tests, at most
23  this is negligence. *See, e.g.*, *Toguchi*, 391 F.3d at 1059 (recognizing that defendant doctor who
24  failed to assess the plaintiff's actual medical condition had, at most, acted negligently). It is
25  well-established that neither negligence nor gross negligence will constitute deliberate
26  indifference. *Farmer*, 511 U.S. at 835-36 & n.4. Finally, Plaintiff provides no evidence that
27  Defendant's chosen course of action was medically unacceptable under the circumstances, or
28  chosen in conscious disregard of an excessive risk to his health. *See Toguchi*, 391 F.3d at 1058.

Thus, Defendant is entitled to summary judgment.

## CONCLUSION

Defendants' motion for summary judgment is GRANTED. Judgment shall be entered in favor of Defendants. The Clerk shall terminate all pending motions and close the file.

IT IS SO ORDERED.

DATED: 3/8/12

LUCY H. KOH
United States District Judge